(C.D. 3933)

AMERICAN STANDARD MERCANTILE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 1, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*John A. Winters*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: This protest is directed against the assessment of duty on rainwear imported from Hong Kong at 25 cents per pound and 27.5 per centum ad valorem under item 382.81 of the Tariff Schedules of the United States, as women's, girls' and infants' wearing apparel of man-made fibers. By amendment to the protest, it is claimed that the merchandise is properly dutiable at 12.5 per centum ad valorem under item 376.50, as rainwear garments with a textile-fabric base supporting a rubber or plastics coating or covering on the outer surface of the garment. A claim under item 772.30 has not been pressed and is deemed abandoned.

The pertinent provisions of the tariff schedules are as follows:

> Rainwear of textile materials and rubber or
>     plastics:

| | | |
|---|---|---|
| 376.50 | Garments with a textile-fabric base supporting a rubber or plastics coating or covering on the outer surface of the garment _____ | 12.5% ad val. |
| | Garments with a textile-fabric outer surface having a rubber or plastics coating or covering on the inner but not on the outer surface of such fabric: | |
| 376.54 | With textile fabric of cotton____ | 15% ad val. |
| 376.58 | Other _____ | 30% ad val. |
| * | * * * * | * * |
| | Other women's, girls' or infants' wearing apparel, not ornamented: | |
| * | * * * * | * * |
| | Of man-made fibers: | |
| * | * * * * | * * |
| 382.81 | Not knit_____ | 25¢ per lb. + 27.5% ad val. |

This case has been submitted on a sample representative of the merchandise and the following stipulated facts:

That the sample consists of a raincoat of textile materials and plastic.

That the sample has a plastic covering over a rayon material; it has a corduroy collar without a plastic covering; the plastic covering is held in place by means of snap fasteners and by stitching.

That said merchandise is not made from fabric coated or filled with rubber or plastic.

On examination, it appears that the rayon portion of the sample is a complete garment to which has been attached on the outside a covering of plastic sheeting material which fits over the entire rayon coat. The plastic material is attached in places by sewing and by means of snap fasteners. It is not stitched to the bottom of the skirt and does not adhere to the rayon fabric. The corduroy collar is sewn on top of the plastic and rayon parts.

The question presented is whether the merchandise should have been classified as rainwear of textile materials and plastics, more specifically described as a garment "with a textile-fabric base supporting a * * * plastics coating or covering on the outer surface of the garment." Since it has been agreed that the merchandise is not made from fabric coated or filled with rubber or plastics, the issue is narrowed to whether the article is composed of a textile-fabric *base supporting* a plastics *covering* on the outer surface.

Plaintiff relies on definitions of the term "cover" and claims that this merchandise has a plastic covering on the outside of the garment and is therefore classifiable under item 376.50. Defendant lays stress on the

words "base" and "supporting" and the legislative history of the rainwear provisions in support of its contention that the merchandise is without the scope of item 376.50.

The term "cover" has been defined as follows:

Webster's Third International Dictionary (1968):

cover * * * 4a: to lie over: spread over: be placed on or often over the whole surface of: ENVELOP, FILM, COAT, * * * 6: to equip with a cover: place or set a cover over permanently or temporarily (~ a book with leather) (~ a couch with mohair) (~ a pan with a lid) 7: to put a surface layer over usu. completely (a tent ~ed with skins) (~ing the old roof with new shingles) (~ing the page with ink) * * *

Funk & Wagnalls New Standard Dictionary (1956):

cover I t. 1. To overspread or overlay with something so as to protect or hide; enwrap.

\* \* \* \* \* \* \*

II i. 1. To spread over so as to conceal something; as, this paint *covers* well. * * *

Accordingly, in a broad sense, the plastic portion of the instant rainwear covers the rayon garment, but, in order to determine the meaning intended by Congress, it is necessary to consider all the language of the statutory provision.

The term "covering" is used in conjunction with the word "coating". One of the meanings of the word "coat", as found in the above lexicons, is to cover or spread with a finishing, protecting or enclosing layer. However, a more specific definition has been provided in the tariff schedules (headnote 2 to subpart 4C of schedule 3), reading as follows:

2. For the purposes of the tariff schedules—
   (a) the term "*coated or filled*", as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby;

The fact that the term "coated" has been so specifically defined and limited suggests that the term "covering" used in conjunction therewith was not intended to have the broad meaning ascribed to it by general lexicons. In fact, item 376.50 is by its terms restricted to coverings supported by a textile-fabric base. The term "base" may refer to the lowest part or foundation of something or to the main ingredient or a common element with which other more distinctive elements unite to form a product. (See dictionaries cited above.) "Support"

means to bear the weight of, especially from underneath, hold in position, keep from falling, strengthen. The textile material in the raincoat before us does not actually support the covering. Both portions are stitched together and hang from the shoulders when worn. Neither bears the weight of nor strengthens the other. Thus, the plastic overgarment here does not appear to be the type of covering Congress had in mind when enacting item 376.50.

Plaintiff points out that the superior heading to items 376.54–376.58 covers "Garments with a textile-fabric outer surface having a rubber or plastics coating or covering on the inner but not on the outer surface of such fabric" and claims that since the concluding word used in that description is "fabric" whereas that in item 376.50 is "garment", Congress intended the latter to have a broader construction. While the two provisions are not the same, the differences do not indicate that Congress meant the term "covering" to have a more comprehensive meaning in one than the other nor that it intended item 376.50 to include a garment with a plastic covering of the type here involved.

The Tariff Classification Study of November 15, 1960, which was before Congress when the Tariff Classification Act of 1962 was enacted, contains the following information in regard to the rainwear provisions:

Schedule 3, part 6, page 227:

> At the public hearings held in connection with schedule 7 domestic producers of rainwear asked that attention be given to the present uncertainties and anomalies involved in the classification of rainwear made of textile fabrics which had been coated or filled with rubber or plastics. Items 376.50 through 376.58 would provide for such rainwear. It is understood that such rainwear is usually in chief value of rubber or plastics when such materials are on the outer surface of the garment and, as such, dutiable at the rate in paragraph 1537(b) either directly (if rubber) or by similitude under paragraph 1559 (if plastics) ; and that the fabric is usually the component of chief value if it is exposed to view and the rubber or plastic rainproofing is not exposed. The rates used in the proposed provisions reflect this distinction. * * *

Schedule 7, part 13, pages 451–452:

> Item 772.30 covers certain wearing apparel including rainwear not specially provided for, of rubber or plastics materials. The principal articles included in this category are rainwear of unsupported plastics material. (Rainwear of plastics or rubber-coated fabrics are specially provided for in part 6D of schedule 3.) The most important article in import trade which would be included in this category at present consists of raincoats made of unsupported vinyl plastics which are currently dutiable by similitude to raincoats of rubber in paragraph 1537(b).

These excerpts indicate that the type of rainwear intended to be covered by items 376.50–376.58 was that made of a single material consisting of a textile fabric coated or similarly covered with rubber or plastics, and not merchandise consisting of an undergarment of one material and an overgarment of another, stitched together.

The subsequent history of the rainwear provisions supports this conclusion. Item 376.50 was repealed by the Tariff Schedules Technical Amendments Act of 1965 (effective subsequent to the date of importation herein) and the following items substituted:

> Garments designed for rainwear, hunting, fishing or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which (after applying headnote 5 of schedule 3) are regarded as textile materials:

| | | | |
|---|---|---|---|
| 376.54 | Of cotton_____ | 15% | ad val. |
| 376.56 | Other _____ | 30% | ad val. |

The report of the House Ways and Means Committee in regard to the bill (Report No. 342, 89th Cong. 1st Sess., May 12, 1965) states that subsection (d) (of section 13 of the bill as enacted) "would substitute new clarifying language for the rainwear provided for in items 376.50–376.58." Included in the report is the following:

> Textile fabrics which have been coated or filled or laminated with rubber or plastics are made to many specifications for a wide variety of uses. The fabrics are usually made of cotton or rayon and the most common coating, filling, or laminating substance is rubber or vinyl plastics. The vinyl-covered fabrics (sometimes referred to as "supported" vinyls) are often made in finishes which simulate leather. For some purposes, the rubber or plastics may *cover* both surfaces of the textile fabric, but for most purposes the rubber or plastics is *applied* to one surface only. Usually the rubber or plastic is opaque and completely obscures the textile fibers or yarns in the fabrics, but occasionally it is transparent and does not do so. These rubber- or plastic-covered fabrics are used in making rainwear, hunting jackets, footwear, headwear, gloves, luggage, handbags, furniture, and other articles. In the final product, the "textile" surface of the fabric may form the outer surface of the article or the only exposed surface of the fabric, thereby lending to the article to the extent used therein the essential characteristic of a woven or knit textile fabric, or, on the other hand, such surface may form the inner surface of the article or be hidden or buried so that it is only the rubber- or plastic-covered surface which give character to the finished product. [Emphasis supplied.]

The conclusion to be drawn from the language of the tariff schedules and the legislative history is that the kind of apparel contemplated by

Congress in the provisions covering rainwear of textile materials and rubber or plastics in items 376.50–376.58 of the tariff schedules as originally enacted and by items 376.54–376.56 of the amended schedules is that composed of a single material, a textile fabric to which a rubber or plastics material has been applied, and not one consisting of separate materials, one of textile fabric and one of plastics, attached to each other by stitching.

For the reasons stated, we hold that the rainwear involved here is not classifiable under item 376.50, as contended by plaintiff. The protest is overruled and judgment will be entered for the defendant.